IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | **Criminal No. GLR-20-377** |
| ) | |
| JUSTIN MICHAEL PETERSON,  ) | |
| Defendant  ) | |

### GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW the United States of America, by counsel and hereby submits its sentencing memorandum recommending that this Court sentence defendant Justin Michael Peterson to 35 years (420 months) imprisonment followed by lifetime supervised release.

### I.   THE OFFENSE CONDUCT

The sexual exploitation of children is an enduring feature of defendant Justin Michael Peterson's life. Defendant is a 28-year-old man with a deep-seated sexual interest in children and a history which includes sexually abusing a five-year-old child and a prior conviction for distribution of child pornography. In view of his history, defendant's past conduct held special predictive value for his future conduct: while serving a term of supervised probation for distributing child pornography, defendant sexually exploited a minor child, trafficked in child pornography, and enthusiastically participated in online groups dedicated to the sexual abuse of children.

In January 2020, defendant engaged in online video chats with Minor Male Victim #1 ("Victim 1") where defendant instructed the child to masturbate, expose his genitals and anus to the camera, and insert a toilet brush handle into his anus. Defendant created recordings of these video chats and saved them to his mobile phone. In addition to depicting Victim 1 engaged in sexually explicit conduct, these videos contain a split-screen window showing defendant

masturbating his erect penis. The videos depict a text window where defendant typed messages including "Lets see that little hole" and "Did u see my cum load?" Doc. No. 56 (Presentence Report, "PSR") ¶9. Before his arrest in February 2020, defendant exchanged over one thousand sexually explicit messages with Victim 1. PSR ¶10. Defendant distributed these sexually explicit videos of Victim 1 to another child, Minor Male #2, online. PSR ¶12.

Prior to his arrest, defendant was actively recruiting an accomplice to assist in kidnapping Victim 1. PSR ¶12; *see also* Exhibit 1 at 11.[1] Defendant made clear his intention in kidnapping Victim 1: "im not letting someone else get him unless i get dibs on his virgin ass[.]" PSR ¶12. Defendant posted messages to online groups offering access to live video streams of Victim 1 engaged in sexual acts, including "My cam slave for rent for $5/30 mins for jack off sessions and $10/30 mins for him performing anal on himself with a toilet brush handle." PSR ¶11.

Meanwhile, defendant participated in multiple online discussion groups dedicated to exchanging child pornography and discussing the sexual abuse of children. The names of the groups included Boy Wonderland, BOYS4MEN, Dadandsonallages3, Help us traffic humans pls, and Gay or bi 13-22. PSR ¶11. Defendant's participation in these groups was frequent and industrious—he was the administrator of at least two of these groups. Defendant used these groups to distribute multiple image and video files depicting the sexual abuse and rape of prepubescent boys. PSR ¶¶ 4 – 16. Defendant posted messages to these boards seeking parents who would allow defendant to sexually abuse their children, including "Any boys or dads with sons in Maryland, usa"; "Anyone have a son they play with? Pm me plz!"; "Any real dads with pre teen sons PM me," and "Anyone got hurtcore?"[2] *See* Exhibit 1 at 7 – 10.

---

[1] Exhibits 1 and 2 will be filed separately under seal.

[2] "Hurtcore" is a "subgenre involving the 'torture or pain and the sexual assault of children.'" *United States v. Heatherly*, 985 F.3d 254, 264 (3d Cir. 2021).

When he was arrested in February 2020, defendant had 688 image files and 529 video files of child pornography saved to his mobile phone. These images and videos depicted the sadistic sexual abuse of prepubescent children, including a video of an adult male anally raping an infant, an image of a young boy tied up with bondage equipment and a ball gag in his mouth, and videos of adult men sexually abusing toddlers and infants. PSR ¶17. A search of defendant's email account revealed that he sent emails to Minor Male #2 containing graphic written stories detailing the brutal sexual assault of six-year-old boys. *See* Exhibit 2. At the time of his arrest, he told investigators that he was sexually attracted to children between three- and fourteen-years-old. PSR ¶8.

## II.     THE PLEA AGREEMENT

Defendant was charged by indictment on November 4, 2020 for his sexual exploitation of Victim 1 and his distribution and possession of child pornography. On August 30, 2022, defendant pleaded guilty to Count One, Sexual Exploitation of a Minor, and Count Three, Distribution of Child Pornography.

The statutory maximum term of imprisonment for Count One is 50 years (600 months) and the statutory maximum term of imprisonment for Count Three is 40 years (480 months). 18 U.S.C. §§ 2251(e) and 2252A(b)(1). The plea agreement contains a provision pursuant to Rule 11(c)(l)(C) that a sentence between 25 years (300 months) and 35 years (420 months) imprisonment is the appropriate disposition of this case. Doc. No. 50 at 8. As part of his plea agreement, defendant agrees to pay restitution, which is mandatory under the law, a special assessment of $100 for each count, and an additional special assessment of $5,000 pursuant to

Section 3014(a).³ Doc. No. 50 at 3, 10. The parties will file a joint motion to include restitution in the judgment. The Court must impose a term of supervised release between five years and life. 18 U.S.C. § 3583(k).

### III.  THE SENTENCING GUIDELINES

The Sentencing Guidelines serve as the "starting point and the initial benchmark" in determining the appropriate sentence and the sentencing court must "remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Here, defendant finds himself in the highest offense level available under the Sentencing Guidelines for good reason: he is a repeat and dangerous sex offender against minors who should serve a lengthy term of imprisonment.

The PSR correctly applies the appropriate specific offense characteristics for Counts One and Three. Of note, the PSR correctly applies a five-level increase pursuant to U.S.S.G. § 4B1.5(b)⁴ because "the defendant engaged in a pattern of activity involving prohibited sexual conduct." A "pattern of activity" is two separate occasions of prohibited sexual conduct with a minor "without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion." U.S.S.G. § 4B1.5 cmt. n. 4(B). In 2010, defendant sexually abused a five-year-old child by touching the child's penis and forcing the child to touch defendant's penis. PSR ¶55. This prior sexual abuse of a minor and his instant offense of conviction constitute a "pattern of activity" under U.S.S.G. § 4B1.5(b). *See United States v. Phillips*, 431 F.3d 86 (2d Cir. 2005) (in applying U.S.S.G. §

---

³ On December 16, 2022, Congress extended application of Section 3014(a) through December 23, 2024. *See* Pub. L. No. 117-229, 136 Stat. 2308.

⁴ Defendant stipulated to application of § 4B1.5 in the plea agreement. Doc. No. 50 at 6. However, the plea agreement incorrectly applies the five-level increase only to Count One. The PSR correctly applies § 4B1.5 after calculating the combined adjusted offense level for both counts of conviction. *See* PSR ¶¶48 and 109. Defendant did not object to application of § 4B1.5 found in the PSR.

4B1.5(b), the district court is permitted to consider conduct that occurred while the defendant was a juvenile). This enhancement "aims not merely to punish a defendant for the specific characteristics of the offenses of conviction […] but to allow a district court to impose an enhanced period of incarceration because the defendant presents a continuing danger to the public." *United States v. Dowell*, 771 F.3d 162, 171 (4th Cir. 2014). The five-level increase for repeat and dangerous sex offenders is tailor-made for offenders like defendant Peterson.

After applying the appropriate enhancements and a three-level decrease for acceptance of responsibility, the Court should find that defendant's total offense level is 43. Because the statutory maximum penalty is less than the upper range of the Sentencing Guidelines' advisory term of life imprisonment, the Guidelines advisory term of imprisonment is the statutory maximum of 50 years imprisonment for Count One and 40 years imprisonment for Count Three.

## IV. THE SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In view of the sentencing factors under 18 U.S.C. § 3553(a), no circumstances genuinely justify a sentence of less than 35 years imprisonment. Defendant's sentence must accurately reflect the seriousness of his shameless sexual exploitation of Victim 1 and his voracious appetite for material depicting the cruel sexual abuse of children. Defendant has shown that he will never be rehabilitated. A sentence that ensures that he will never have access to children again and which extinguishes his ability to access child pornography is the best way to protect the public. The Court should sentence defendant to 35 years imprisonment to be followed by a lifetime of supervised release.

### A. The History and Characteristics of the Defendant Merit a Severe Sentence

Defendant's history and characteristics are dominated by his sexual interest in children and his unwillingness to refrain from the sexual exploitation of children. When he was 15 years

old, defendant sexually abused a five-year-old-child. PSR ¶55. The state court placed defendant on juvenile probation. *Id*. After multiple violations of his probation, defendant spent the next four years in various supervised living programs where he participated in outpatient sex offender counseling. PSR ¶57. Defendant's juvenile probation terminated in November 2015 after his twenty-first birthday. PSR ¶55.

Approximately five months after termination of his juvenile probation, defendant was arrested for distributing child pornography depicting "sadomasochistic abuse" of a toddler. PSR ¶59. Defendant pleaded guilty and was sentenced to four years imprisonment followed by five years of supervised probation. *Id*. Defendant again participated in sex offender treatment while on supervision for his state child pornography offense. PSR ¶91. During this treatment, defendant was apparently unwilling to accept that he should not be near minor children and expressed frustration when his counselor told him he "was 'not ready' to be in a classroom setting with minors." *Id*.

After his release from prison in October 2018, defendant violated the terms of his probation multiple times before his instant offenses. PSR ¶59. On October 30, 2019, defendant violated his probation by "viewing videos/pictures of adult/child pornography on an unmonitored phone" and was sentenced to yet another period of incarceration. *Id*. Within weeks of his release from confinement for his probation violation, defendant immersed himself in a community dedicated to the sexual abuse of children, distributed child pornography, sexually exploited Victim 1, and explored opportunities to commit hands-on sex offenses against children.

While defendant reports that he experienced sexual abuse when he was between 12 and 14 years old, this abuse does not excuse or mitigate his criminal conduct. To be sure, defendant's experience of sexual abuse as a child is a terrible thing for a person to endure. However, the

relevance of this abuse to defendant's criminal conduct is minimal. The abuse defendant experienced did not involve the distribution of images and videos of prepubescent children being sexually abused to online child pornography groups. It did not involve using screen recording software to record a minor child displaying his anus to the camera while defendant masturbated. It did not involve plotting to kidnap a minor child to use as a "cam slave … for jack off sessions." PSR ¶11. Simply put, the sexual abuse defendant experienced does not make him any less culpable.

In determining defendant's sentence, the Court should give minimal weight to defendant's economic or social conditions, as these characteristics do not genuinely mitigate his sexual exploitation of Victim 1 or his eager consumption of child pornography. Defendant's history and characteristics do not merit leniency from this Court. Rather, his history and characteristics demand a lengthy term of imprisonment. A sentence of 35 years imprisonment correctly accounts for defendant's history and characteristics.

**B.      Lengthy Imprisonment is Necessary to Reflect the Seriousness of the Offense**

The sexual exploitation of children and distribution of child pornography are undisputedly serious offenses. The Fourth Circuit has long held that "child pornography crimes are grave offenses warranting significant sentences." *United States v. Johnson*, 242 F. App'x 7, 11 (4th Cir. 2007). Appellate courts are unanimous in describing the severe harm of child pornography crimes. *See*, *e.g.*, *United States v. Norris*, 159 F.3d 926, 929–30 (5th Cir. 1998) ("Both the Supreme Court and Congress have explicitly acknowledged that the child victims of child pornography are directly harmed by this despicable intrusion on the lives of the young and the innocent.").

In October 2021, the U.S. Sentencing Commission published a report on federal sentencing for child pornography offenders, which began by stating that "[c]hild pornography production offenses cause substantial and indelible harm to victims." U.S. Sentencing Commission, Federal Sentencing of Child Pornography: Production Offenses (2021) ("2021 Report").[5] In this report, the Sentencing Commission identified several factors to consider in gauging the severity of an offender's production of child pornography, including proximity, participation, and propensity. *Id*. at 26.

Each of these factors weigh in favor of lengthy imprisonment for defendant. First, defendant cultivated proximity with Victim 1 by using the internet to find him, gain his trust, and to persuade him to engage in sexually explicit conduct on a video chat. *See id*. at 40 ("Child pornography production offenders exploit technology to gain access to potential victims to produce child pornography."). Here, defendant used the internet's greatest advantage—the ability to easily connect and communicate with others—to commit serious crimes using nothing more than his mobile phone. With the world at his fingertips, defendant chose to use technology to engage in the sexual exploitation of children. What's more, defendant began using the multiple social media platforms to seek victims and traffic child pornography almost immediately after his release from prison for his state child pornography offense. In view of his history, defendant's use of the internet to facilitate his crimes weighs in favor of severe punishment.

Further, defendant had a high degree of participation in his sexual exploitation of Victim 1. Defendant exchanged approximately 1,255 messages with Victim 1 and conducted multiple

---

[5] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf

video chats where defendant directed the child to engage in sexual acts. Concerningly, defendant directed Victim 1 to insert a toilet brush handle into his anus. The video defendant created of this degrading act shows Victim 1 in obvious discomfort. Defendant's high degree of participation in directing a child to engage in such acts merits serious punishment.

The third factor identified by the Sentencing Commission weighs most heavily against defendant: propensity. The Sentencing Commission examined four measures of an offender's propensity:

> (1) whether an offender shared self-produced child pornography, or possessed or distributed additional child pornography that the offender did not produce;
>
> (2) whether an offender was a member of an online community devoted to child pornography or sexual exploitation;
>
> (3) whether an offender had any previous contact sex offenses (any illegal sexually abusive conduct involving actual or attempted sexual contact with a victim); and
>
> (4) whether an offender had a history of noncontact sex offenses (such as soliciting a minor online).

*Id*. at 46.

In view of these measures, defendant's propensity to engage in the sexual exploitation of children is off the charts. Defendant distributed sexually explicit videos of Victim 1 to others, including to another minor, Minor Male #2. Defendant frequently traded child pornography to members of online discussion groups dedicated to child pornography. Defendant was the administrator of a number of these groups. PSR ¶11. As discussed above, defendant's history includes a contact offense against a five-year-old, a conviction for distributing child pornography, multiple probation violations for accessing child pornography, and the instant

offenses which he committed while on supervised probation. Worse still, defendant freely admits his sexual interest in children as young as *three years old*. PSR ¶8.

Considered alongside the Sentencing Commission's report, defendant's criminal conduct is indisputably serious. Only a lengthy term of imprisonment will accurately reflect the seriousness of defendant's crimes.

C.  **Thirty-Five Years Imprisonment is Necessary to Protect the Public from Defendant and to Deter Similar Criminal Conduct**

Defendant is a clear and present threat to children. His prior sentence of four years imprisonment, five years of supervised probation, registration as a sex offender, and participation in sex offender treatment programs were woefully inadequate to protect the public from defendant. These crimes cannot simply be dismissed as youthful indiscretion or some isolated incident—he committed the instant offenses when he was 25 years old after he had already served years in prison for similar offenses. Moreover, defendant's chat records demonstrate an escalation in the severity of his criminal conduct. Before his arrest, defendant was casting about in various chat groups seeking assistance in kidnaping Victim 1 and looking for parents who would allow defendant to rape their minor children. *See* Exhibit 1 at 9.

Defendant's lack of any genuine remorse for his past crimes foretells a grim future if he receives a lenient sentence. As an example, defendant discussed the five-year-old victim of his prior contact offense in a chat with another like-minded person:

> Defendant: What u gonna do to [the victim]
> Like i said idc [I don't care] what happens to him
> Make it painful as possible is preferred
> […]
> Y talk? When u can just kidnap him?
>
> [John Doe]: Well shit unless you and I are jerking each other off, what else can we do?

|              |                                                                                              |
|--------------|----------------------------------------------------------------------------------------------|
| Defendant:   | Dude... i cant contact him as he told on me when i raped him when he was 5<br>That was 10 yrs ago<br>I was 15 |
| [John Doe]:  | Ok                                                                                           |
| Defendant:   | So, only way ur getting to him is to kidnap him                                              |

Exhibit 1 at 13.

Defendant's own words about his prior victim show that he will never be rehabilitated. Defendant plainly lacks even the most basic measure of respect for the victims of his crimes. There is no reason for the Court to believe that he does not hold the victims of the instant offenses in similarly low regard.

There is little reason to believe that defendant will change. The recurrence of defendant's sexual exploitation of minors strongly suggests that his sexual interest in children is a deeply rooted feature of his personality.[6] The Court needs to look no further than defendant's collection of written stories describing graphic sexual abuse of children to see that his sexual interest in children is not only profound, but also imaginative and wistful. *See* Exhibit 2.

These circumstances point to a natural conclusion: defendant is a danger to the public. *See United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011) (Posner, J.) ("A pedophilic sex offender who has committed both a child-pornography offense and a hands-on sex crime is more likely to commit a future crime, including another hands-on offense, than a defendant who has committed only a child-pornography offense"). Supervision is inadequate to protect the public

---

[6] "Pedophilia per se appears to be a lifelong condition." Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (5th ed., 2013) ("DSM-5").

from defendant. A lengthy term of imprisonment is the best assurance that defendant will not sexually exploit children in the future.

Moreover, a lengthy term of imprisonment serves to deter would-be offenders from producing, trafficking, or accessing child pornography. Congress, the Supreme Court, and the Sentencing Commission find general deterrence[7] to be an important factor when considering an appropriate sentence. Indeed, "deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing[.]" *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007). The best way to deter future offenders is to sentence defendant to 35 years imprisonment.

## CONCLUSION

For the reasons stated above, the government recommends that the Court impose a sentence of 35 years imprisonment followed by lifetime supervised release for defendant Justin Michael Peterson.

Respectfully submitted,

EREK L. BARRON
United States Attorney

Date: January 12, 2023

/s/ *Eduardo Palomo*
Eduardo Alberto Palomo
Trial Attorney
Texas Bar No. 24074847
United States Department of Justice
1301 New York Ave NW
Washington, D.C. 20005
Tel: (202) 305-9635
Email: Eduardo.palomo2@usdoj.gov

---

[7] The Sixth Circuit in part reversed a district court when the district court failed to see any importance in general deterrence. *See United States v. Bistline*, 665 F.3d 758,767 (6th Cir. 2012). The district court stated, "general deterrence ... will have little [if] anything to do with this particular case." *Id*. The Sixth Circuit found that the district court's statement was "inexplicable, and in any event conflicts with our statement that general deterrence is crucial in the child pornography context[.]" *Id*. (internal citation and quotations omitted).